**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1244**

In Re:  BON-AIR PARTNERSHIP,

                 Debtor.

--------------------------

ALEX RAHMI,

                 Plaintiff – Appellant,

         v.

ROBERT W. TRUMBLE, Trustee,

                 Trustee – Appellee,

         and

UNITED STATES TRUSTEE,

                 Trustee.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  John Preston Bailey, Chief District Judge.  (3:11-cv-00061-JPB; 3:09-bk-02621)

Argued:  March 21, 2013                Decided:  April 11, 2013

Before MOTZ and DUNCAN, Circuit Judges, and Robert E. PAYNE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John B. Simpson, MARTINWREN, PC, Charlottesville, Virginia, for Appellant. Mary Binns-Davis, MCNEER, HIGHLAND, MCMUNN & VARNER, LC, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Robert W. Trumble, Suzanne Williams-McAuliffe, MCNEER, HIGHLAND, MCMUNN & VARNER, LC, Martinsburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from the bankruptcy proceedings of Bon-Air Partnership ("Bon-Air"), a single-asset real estate business. The sole issue on appeal is whether a conflict of interest arose from the trustee's appointment of a law firm that represented another party in a separate debt collection action against one of Bon-Air's general partners, Alex Rahmi ("Rahmi" or "Appellant"). Many months later, after the trustee's sale of the partnership's sole asset had already occurred and been approved by the court, Rahmi asserted this conflict of interest as a reason to invalidate the sale. The bankruptcy court found no conflict of interest, and declined to remove the trustee or invalidate the sale. For the following reasons, we conclude that the district court correctly affirmed the judgment of the bankruptcy court.

I.

A.

Bon-Air filed for Chapter 7 Bankruptcy on November 11, 2009, and Appellant signed the Petition as a general partner. The partnership's primary asset consisted of approximately 130 acres of land in Charles Town, West Virginia (the "subject property"), and was valued in the operative Petition at $750,000. The total debt of the bankruptcy estate was

3

$793,162.42, consisting almost entirely of debt held by two creditors secured by the subject property. Appellee Robert Trumble was appointed as trustee of the estate ("Trustee") a few days later.

On April 27, 2010, the first priority creditor, Jefferson Security Bank, moved to lift the automatic bankruptcy stay so that it could enforce its deed of trust and initiate foreclosure proceedings to sell the property. Seeking to avoid foreclosure, and believing he could secure a higher value for the estate through a private sale, Trustee filed a Motion to Sell, attaching thereto a March 10, 2010 offer to purchase the property for $1.2 million. Rahmi objected, asking the court to delay the sale "in order for the Trustee to continue to market the property in an effort to raise the selling price." J.A. 112. Trustee thereafter filed a notice to allow an upset bid private auction to be held immediately after the hearing on its motion. The day before the hearing was to occur, the court continued it, stating that it would grant Trustee a period of up to six months to market the property before allowing the bank to seek a foreclosure sale.

The next day, Rahmi sought to dismiss the bankruptcy proceedings. Both Trustee and the creditors objected, and the court denied the motion, reasoning that Rahmi had already repeatedly attempted to delay the sale of the subject property

4

in a deliberate effort to avoid satisfaction of Bon-Air's creditors--by filing successive bankruptcy petitions and using other delay tactics in those cases--and because Rahmi proffered no alternatives to Trustee's concrete offers to purchase. The bankruptcy court concluded that, "while [Rahmi's] conduct does not conclusively show a lack of good faith, [his] last-ditch effort to dismiss the case in the face of an impending sale rings hollow." J.A. 156.

On July 6, 2010, the Bankruptcy court approved Trustee's application to employ his law firm, McNeer, Highland, McMunn and Varner (the "law firm") as special counsel. Meanwhile, the law firm had been representing Wells Fargo Bank ("Wells Fargo") in an unrelated action to collect from Rahmi on an outstanding $208,000 personal loan. Notably, Rahmi did not object to the law firm's appointment as special counsel.

At the upset bid auction on September 2, 2010, the winning bid of $3 million was submitted, and approved by the bankruptcy court. Neither the debtor nor Rahmi objected to the sale at that time. The court noted that Trustee's sale of the subject property at private auction was an arms-length transaction, free of fraud or collusion, and made in good faith in accordance with the relevant bankruptcy code, 11 U.S.C. § 363(m).

Following the sale, Trustee reported that a total of $945,411.19 had been paid to creditors to satisfy liens on the

5

property. Additional deductions of $180,000 in commissions and $4,151.37 in expenses left a total of $1,870,437.44 available for distribution to Bon-Air's partners, including Rahmi.[*] Those funds were deposited into an interest-bearing account opened by Trustee on behalf of the bankruptcy estate, where they remain still.

On January 25, 2011, the law firm discontinued its representation of Wells Fargo in the separate proceedings against Rahmi. Nonetheless, on April 1, 2011, Rahmi filed a Motion to Remove Trustee for Conflict of Interest based on the law firm's involvement in both actions, which the bankruptcy court denied. Rahmi initially appealed that order to the district court, but then voluntarily dismissed it.

## B.

On May 16, 2011, Rahmi filed a Motion to Amend Judgment and to Invalidate Foreclosure Sale ("Motion to Amend"), arguing that Trustee was not disinterested, and had violated his fiduciary duty by selling the subject property at a grossly inadequate price. Rahmi based this assertion on real property assessments for surrounding properties that he presented for the first time,

---

[*] Rahmi claims to be one of four partners in Bon-Air, holding a 50% interest, although the extent of his ownership interest is apparently disputed. J.A. 32, 52; Appellee's Br. at 2 n.1.

and which he contended valued the subject property at $16.2 million. The bankruptcy court denied the motion. Rahmi appealed, and the district court issued a memorandum opinion affirming the order of the bankruptcy court, Rahmi v. Trumble, 464 B.R. 710 (N.D.W. Va. 2011) ("Memorandum Opinion"). The district court rejected Rahmi's conflict of interest arguments in an order denying interlocutory appeal, issued on the same day as its Memorandum Opinion. See Rahmi v. Trumble, No. 11-CV-61, 2011 WL 6887728 (N.D.W. Va. Dec. 29, 2011) ("Conflict of Interest Order"). Rahmi timely appealed from both orders.

## II.

At oral argument, counsel for Rahmi clarified that he did not seek to have the Trustee's sale set aside by this court. Thus, Rahmi contests only the bankruptcy court's finding of fact that no actual conflict of interest existed, asking us to overturn that finding and remand for "whatever consequences might flow from that." Because we see no actual conflict of interest, and no basis for concluding that the bankruptcy court's factual findings were clearly erroneous, we affirm.

The Bankruptcy Act allows trustees, with the court's approval, to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the

7

trustee's duties." 11 U.S.C. § 327(a); see also In re Harold & Williams Dev. Co., 977 F.2d 906, 909 (4th Cir. 1992) (describing the bankruptcy court's "broad discretion" to approve such requests). The Act defines a "disinterested person" as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, or connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). Courts have interpreted these provisions to mean that trustees "may employ a creditor's attorney under § 327(c) provided the dual representation presents no actual conflict of interest." Byrd v. Johnson, 467 B.R. 832, 849 (S.D. Md. 2012) (citation omitted).

Although Rahmi confusingly presents several different arguments regarding the impact of the law firm's alleged conflict of interest, we need not parse them because they all necessarily fail at the first step: there was no actual conflict of interest. At the most basic level, the separate debt collection proceeding was against Rahmi as an individual, while the bankruptcy proceedings dealt with the property of the partnership--an unrelated matter. As the district court observed, under West Virginia law, "'[p]roperty acquired by a partnership is property of the partnership and not of the

8

partners individually.'" Conflict of Interest Order, 2011 WL 6887728, at *3 (quoting W.Va. Code § 47B-2-3).

Thus, the fact that the law firm represented Wells Fargo in an action against Rahmi personally is not an interest "materially adverse" to the partnership's bankruptcy estate, and Rahmi's arguments to the contrary are far too attenuated to gain traction. Any interest Wells Fargo might have had in obtaining a judicial sale of the subject property so that surplus could be paid out to Bon-Air's partners, including Rahmi, in order for Rahmi to be able to satisfy his personal debt to Wells Fargo, is at best a questionable basis for a conflict of interest. Taking the additional step, as Rahmi presses, of considering the motivation of Wells Fargo's counsel, further strains logic. Rahmi's speculative chain of inferences could just as easily lead us to conclude that Wells Fargo (and its counsel) would have had an interest in obtaining the highest possible sale price for the subject property, to ensure that Rahmi possessed sufficient funds to fully satisfy his personal debt to Wells Fargo. Accordingly, we find no grounds for a conflict of interest here.

Furthermore, assuming for the sake of argument that a conflict did exist, Rahmi was aware of such conflict from the outset but failed to raise the issue until after the (apparently disfavorable) sale was affirmed. Even if equitable estoppel

9

does not bar Rahmi's belatedly asserted conflict of interest challenge, it certainly calls the propriety of his motives, and any potential for harm to him, into question. Rahmi has been unable to articulate any way in which Trustee's disqualification at this stage of the proceedings would impact the bankruptcy court's disposition of the estate.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.